TARA K. McGRATH
United States Attorney
KEVIN J. BUTLER, CBN 329129
BILLY JOE MCLAIN, CBN 290682
Special Assistant U.S. Attorneys
PETER KO, CBN 191994
Assistant U.S. Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel.: (619) 546-7359
Email: peter.ko2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) No. 21CR2627-CAB |
|---|---|
| Plaintiff, | ) MOTION OF THE UNITED STATES FOR ORDER DIRECTING BOP TO PROVIDE INVOLUNTARY MEDICATION PLAN |
| v. | |
| MATTHEW TAYLOR COLEMAN, | ) DATE: None set<br>) TIME: None set |
| Defendant. | |

The United States of America moves for an order finding that important government interests are at stake and directing the Bureau of Prisons to provide an involuntary medication plan for defendant Matthew Coleman.

1.  Coleman was committed to the Attorney General's custody under 18 U.S.C. 4241(d), because evidence suggested he has a mental disease or defect and cannot understand the proceedings or help his defense. A Bureau of Prisons doctor, Burton, evaluated Coleman for 21 weeks and, despite Coleman not participating, thinks he meets the *DSM-5-TR*'s criteria for

1

Unspecified Schizophrenia Spectrum and Other Psychotic Disorder and is not competent to proceed or make decisions in his case. Burton Rep. 4/4/24 at 33, 35. Burton says this is a chronic condition that probably will not remit without antipsychotic medication. *Id.* at 35.

The BOP considered involuntarily medicating Coleman under *Washington v. Harper*, 494 U.S. 210 (1990). But an administrative hearing officer thought he did not seem gravely disabled or a danger to himself or others in custody and did not satisfy *Harper*'s criteria, 494 U.S. at 227, notwithstanding that in 2022, while in custody, he cut himself with a razor, dove headfirst into a toilet, punched himself in the face, and slammed his head into the floor. See Burton Rep. 19-20, 28, 36.

2. Unless Coleman is malingering—a possibility, according to Burton, see *id.* at 35—that leaves involuntary medication under *Sell v. United States*, 539 U.S. 166 (2003), as the only other way he might become competent for trial. *Sell* established four requirements for an order to be entered for that purpose. *Id.* at 179-81. One is important governmental interests must be at stake. *Id.* at 180. Circuit decisions say that inquiry must be undertaken in two steps. The first asks if the charged crimes are sufficiently serious to establish such interests; if they are, the second asks if any "special circumstances" lessen that interest. *United States v. Onuoha*, 820 F.3d 1049, 1054 (9th Cir. 2016).

2

a.   On the first: *Sell* says the "Government's interest in bringing to trial an individual accused of a serious crime is important," 539 U.S. at 180, and Coleman's crimes obviously are serious. The recommended guideline sentence for two counts of first-degree murder without prior convictions is life in prison without an adjustment for acceptance of responsibility and 360 months to life in prison with. See USSG 2A1.1 and Chap. 3. The statute *requires* life in prison and made capital punishment a possibility until the Attorney General chose not to seek it. 18 U.S.C. 1119, 1111(a)-(b). The advisory or mandatory penalty is the first sign of a crime's severity, *United States v. Hernandez-Vasquez*, 513 F.3d 908, 918-19 (9th Cir. 2008), and in this case it is one step below the highest sanction (death) that courts can impose.

Decisions like *Onuoha* also have considered "the specific facts of the alleged crime." 820 F.3d at 1055. Onuhoa's conduct was "without doubt sufficiently serious to support a strong governmental interest." He made "phone calls to [airport] officials on the eve of the anniversary of the September 11th attacks" that "were reasonably perceived as terrorism threats." *Id.* Serious no doubt, but Coleman took his 10-month-old daughter and 2-year-old son from their mother, stabbed them to death with a fishing spear, and left their bodies in the dirt.

b.   The question then is whether "special circumstances" override the importance of the government's interest in trying a father accused of murdering his infant children that is

3

"fundamental to a scheme of ordered liberty and prerequisite to social justice and peace." *Sell*, 539 U.S. at 180. Coleman faces a mandatory life sentence, so the possibility raised by *Sell* and other decisions that he already has served much of his likely sentence is not a factor. *Id.* At all events, *Onuoha* recognizes "there is an important distinction between incarceration itself, and the significance for society of gaining a criminal conviction for a defendant's violation of the law," because conviction serves "general deterrence of the serious crime." 820 F.3d at 1056.

Another possibility cited by *Sell*, 539 U.S. at 180, is leaving the offender untreated and instead civilly committing him under 18 U.S.C. 4246. But at this stage there is no assurance Coleman meets the criteria for civil commitment. See 18 U.S.C. 4246(d) (requiring clear and convincing evidence that release poses a substantial risk of bodily injury to another or serious damage to another's property). *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 694 (9th Cir. 2010), *United States v. Gillenwater*, 749 F.3d 1094, 1101 (9th Cir. 2014), and *Onuoha*, 820 F.3d at 1057, all dismissed this prospect for that reason. At any rate, *Sell* already cautioned that potential civil commitment could only "moderate [and] not eliminate" "the importance of the governmental interest in prosecution." 539 U.S. at 186. It might keep Coleman off the street (until he recovers) but disserves other interests. "The Government has a substantial interest in timely prosecution. And it may be

4

difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost," *id.* at 180, especially when potential witnesses are in another country and harder to keep track of or locate as time passes, a concern in this case. This is why *Sell* cautioned it does "not mean to suggest that civil commitment is a substitute for a criminal trial." *Id.* No special circumstances make Coleman's prosecution unimportant.

3. *Sell* sets out three additional requirements to order involuntary medication to restore competency for trial. But those considerations—whether the treatment is medically appropriate, the likelihood it works without counterproductive side effects, and the possibility of other less-intrusive options, *id.* at 181—require a proposed treatment plan to analyze. Accordingly, we seek an order directing the BOP to provide a proposed treatment plan for Coleman within 60 days of the court's order. See Burton Rep. 36.

DATED:   May 28, 2024

                Respectfully submitted,

                TARA K. McGRATH
                United States Attorney

                s/Peter Ko

                KEVIN J. BUTLER
                BILLY JOE MCLAIN
                 Special Assistant U.S. Attorneys
                PETER KO
                 Assistant U.S. Attorney